UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE MASSACHUSETTS LIFE | ) | Civil Action Nos.: |
| INSURANCE COMPANY LITIGATION | ) | |
| | ) | 11-cv-30039-MAP |
| | ) | 11-cv-30044-MAP |
| | ) | 11-cv-30047-MAP |
| | ) | 11-cv-30048-MAP |
| | ) | 11-cv-30094-MAP |
| | ) | 11-cv-30126-MAP |
| | ) | 11-cv-30127-MAP |
| | ) | 11-cv-30141-MAP |
| | ) | |

MEMORANDUM AND ORDER WITH REGARD TO
PLAINTIFF'S MOTIONS FOR DETERMINATION
ON ITS EXPERT DISCOVERY SCHEDULE
March 5, 2013

NEIMAN, U.S.M.J.

Presently before the court in each of the above-numbered actions is

Massachusetts Mutual Life Insurance Company ("Plaintiff")'s motion for an order setting

a schedule for an early determination on the admissibility of its sampling methodology.

The underlying cases involve claims that the various Defendants violated the

Massachusetts Uniform Securities Act by making misrepresentations in the sale to

Plaintiff of close to eighty residential mortgage-backed securities (comprised of over

230,000 loans).  As part of proving its claims, Plaintiff intends to engage "re-

underwriting" experts to review and analyze the mortgage loans.  Now at issue before

the court is Plaintiff's request that the court schedule a *Daubert* hearing on its sampling

methodology prior to the close of fact discovery, a proposal opposed by Defendants.

For the reasons and within the limitations which follow, the court will ALLOW Plaintiff's

motion for the *Daubert* hearing, to be held before District Judge Michael A. Ponsor, but will set a slightly different schedule than that proposed.

## I. DISCUSSION

In moving for an early determination on the admissibility of its sampling methodology, Plaintiff argues that such a determination is necessary to streamline both fact and expert discovery and to save the parties, third parties, and the court time and expense.  In response, Defendants, concentrating primarily on the timing of the *Daubert* hearing, oppose Plaintiff's request, arguing that it is premature and that the appropriate time would be after fact discovery is completed; document discovery, at least, is presently scheduled to end on September 27, 2013.  As grounds, Defendants assert, first, that setting a schedule for a *Daubert* hearing prior to fact discovery runs afoul of the Federal Rules of Civil Procedure.  Second, Defendants argue that more time is necessary before any *Daubert* hearing is scheduled because, without complete fact discovery, they will not be able to challenge the reliability, if not admissibility, of the sampling methodology.  Finally, Defendants argue that an early determination on sampling would limit their discovery of loans outside the sample to support their defenses.  The court will address each of these concerns in turn.

First, "the Civil Rules endow trial judges with formidable case-management authority" and, "in exercising this power, trial judges enjoy great latitude."  *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (internal quotations omitted).  Such authority includes the court's ability to manage pretrial discovery.  *See Poulin v. Greer*, 18 F.3d 979, 986 (1st Cir. 1994) ("District courts have broad discretionary powers to manage cases and, concomitantly, to manage pretrial discovery.").  In a similar action

2

pending in the Southern District of New York, in fact, District Judge Denise Cote set a

schedule for an early *Daubert* hearing similar to the one proposed by Plaintiff.  *See*

*Federal Housing Finance Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at * 3

(S.D.N.Y. Dec. 3, 2012) (hereinafter "*FHFA*").

Second, Defendants argument that an early *Daubert* hearing would prevent them

from competently challenging Plaintiff's expert is not entirely persuasive.  While it may

be true that additional fact discovery will supplement any findings made by the experts,

should Plaintiff's expert's sampling methodology pass muster at the *Daubert* hearing,

such discovery is not necessary for an initial determination of the reliability, or lack

thereof, of the methodology itself. Ultimately, Plaintiff's expert's sampling methodology,

if accepted by the court, will be based on a review of the same loan tapes available to

Defendants.  Indeed, as was noted by the court in *FHFA*, 2012 WL 6000885, at *3,

"[t]he identification of the loans chosen by the plaintiff will permit the defendants to

conduct their own re-underwriting of the plaintiff's loan samples, and to evaluate just

how well or poorly the originators, and indeed the underwriters of the securities,

performed their work."

Moreover, should the court approve Plaintiff's sampling methodology, it would not

foreclose Defendants from challenging on *Daubert* grounds the opinions thereafter

offered by Plaintiff's experts based on the samples.  Nor would such approval prevent

Defendants from fully pursuing their defenses to Plaintiff's claims, including (a) that the

offering materials did not contain any material misstatements or omissions, (b) that,

even if there were such misstatements or omissions, Plaintiff had knowledge of them,

(c) that Defendants acted in good faith, and (d) that Plaintiff's losses, if any, were not

caused by any misstatements or omissions.

Nonetheless, in support of their position that they should not have to challenge Plaintiff's sampling methodology without the benefit of more complete fact discovery, Defendants cite two state court decisions - - one from New York and one from Washington - - in which the courts denied the plaintiffs' motions for early briefing on the admissibility of sampling methodology. In the New York case, the court, in a brief hand written order, denied the request because the plaintiff had not obtained an expert's review of its proposal. *See Assured Guaranty Municipal Corp. v. DB Structured Prods., Inc.*, No. 650705/2010 (N.Y. Sup. Ct. Sept. 12, 2011) (Parties' Competing Statements, Exhibit A). The court explained that, "in the absence of an expert report explaining the method used to select the 'representative' sample with certain 'characteristics' there is no foundation laid for the admissibility of the evidence." *Id.* In contrast here, Plaintiff is not suggesting that the court make an admissibility determination based on "a hypothetical method of statistical sampling" without the opinion of an expert. *Id.* Rather, Plaintiff asks that the court make a determination on a sampling methodology, explained by an expert's report, only after Defendants and their experts have had the opportunity to review the report. As to the Washington case relied on by Defendants, *Federal Home Loan Bank of Chicago v. Banc of America Securities LLC, et al.*, No. 10-2-36526-5 SEA (Wash. Super. Ct. Feb. 8, 2012) (Parties' Competing Statements, Exhibit G), the court's brief order does not explain the posture of the case -- although it does note that statistical sampling is "a widely used and generally accepted tool for making reliable estimates" -- and is, therefore, unhelpful to this court's consideration of the instant motion.

4

Third, Defendants argue that an early approval of Plaintiff's sampling methodology would preclude them from discovering loans that fall outside the sample population. This concern is largely unfounded. Plaintiff does not, and cannot, suggest that Defendants would be bound by the limits of its own sampling methodology. Quite to the contrary, Plaintiff acknowledges that Defendants, as they see fit, are free to pursue their own methodology and/or their own discovery, including exploration of loans outside Plaintiff's sample group.

In sum, as was true in *FHFA*, the court finds that "early vetting" of Plaintiff's sampling protocol can limit "the costly and time-consuming process of re-underwriting without some assurance that the samples will be deemed admissible." *Id.*, 2012 WL 6000885, at * 3. Still, given District Judge Cote's use of the word "some" and this court's independent view, the assurance of admissibility is somewhat limited. As discussed above, should Plaintiff's sampling methodology be approved, Defendants will be able to challenge the ultimate findings before the trier of fact who, in turn, will determine how much weight to accord those results; in particular, Defendants will be able to challenge any extrapolation of the sample results to the entire population of loans. *See* Expert Report of Charles D. Cowan, Ph.D. (August 9, 2012), ¶¶ 63, 65, filed in *FHFA* (Parties Competing Statements, Exhibit E). To be sure, Defendants, in support of their opposition to Plaintiff's motion for an early *Daubert* hearing, make much of Dr. Cowan's statement in his affidavit that "[t]he process of extrapolation of the results from the sample to the population is an integral part of the planning for and acceptance of sampling as a viable scientific method." *Id.* at ¶ 64. In essence, Defendants argue that, as far as they understand, Plaintiff's proposed sampling methodology will not

5

encompass an extrapolation component.  Defendants' argument, in the court's opinion, is better addressed at the *Daubert* hearing itself.

Moreover, even if Plaintiff's sampling is preliminarily approved, Defendants, in this court's opinion, could seek to have that approval re-appraised should new facts come to their attention during the parallel discovery process which materially undermine the reliability of the sampling methodology.  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *5-6 (N.Y.Sup. Dec. 22, 2010) (after deciding that the plaintiff's sampling methodology was valid, the court indicated that it was making "no finding that Plaintiff's proposed method is the only method by which Plaintiff (or Defendant) may present evidence or that Plaintiff's method is without flaw or unsusceptible to challenge ").  This, of course, is Judge Ponsor's call to make.  Finally, the use of sampling will not "obviate Plaintiff's need to prove each element of its claims." *Id.* at *2.

## II. CONCLUSION

For the reasons stated, the court ALLOWS Plaintiff's motion.  In so ruling and in sounding some cautionary notes, the court has attempted to reach a balance between focusing the discovery process on the one hand and, on the other, recognizing some of the pitfalls of an early *Daubert* hearing.  That said, the court, with the understanding that practically all the loan tapes have been produced by Defendants, sets the following schedule:

1.    Plaintiff shall designate and disclose information regarding its sampling
      experts in accord with FED. R. CIV. P. 26(a)(2) by April 12, 2013.

2.    Defendants, if they wish, may take Plaintiff's expert's deposition and file

their *Daubert* motion challenging Plaintiff's expert no later than May 21,
2013.  By said date, Defendants also shall designate and disclose
information regarding their sampling expert, if any, in accord with FED. R.
CIV. P. 26(a)(2).

3.     Plaintiff, if it wishes, may take Defendant's expert deposition and file its
opposition to Defendants' *Daubert* motion by June 18, 2013, to which
Defendants may reply by July 2, 2013.

4.     The *Daubert* hearing shall take place on July 11, 2013, at 10:00 a.m.
before Judge Ponsor.

IT IS SO ORDERED.

DATED: March 5, 2013

　/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge